IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CV-71-KS

| | |
|---|---|
| CLIFTON HOWARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| ANDREW M. SAUL, Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Clifton Howard ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties. For the reasons set forth below, the court grants Plaintiff's Motion for Judgment on the Pleadings [DE #20], denies Defendant's Motion for Judgment on the Pleadings [DE #24], and remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB on January 29, 2013, with an alleged onset date of November 13, 2013.[1] (R. 16, 194–95.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 105, 122, 145–46.) A hearing was held on March 2, 2015, before Administrative Law Judge ("ALJ") Gary Brockington, who issued an unfavorable ruling on April 1, 2015. (R. 13–72.) On June 21, 2016, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff then filed a complaint in this court seeking review of this final administrative decision. *See Howard v. Berryhill*, No. 4:16-CV-228-D, ECF No. 6 (E.D.N.C. Aug. 18, 2016). This court ultimately remanded the case to the Commissioner. *Howard v. Berryhill*, No. 4:16-CV-228-D, 2017 WL 3995812 (E.D.N.C. Sept. 11, 2017). The Appeals Council then vacated the prior decision of the Commissioner and remanded the case to an ALJ. (R. 621.)

On November 16, 2018, ALJ Christopher Willis conducted another hearing, at which Plaintiff and counsel appeared. (R. 564–90.) ALJ Willis issued an unfavorable opinion on March 15, 2019. (R. 539–63.) Plaintiff did not file exceptions to the ALJ decision and filed for direct review of the unfavorable ALJ decision in this court. *See* 20 C.F.R. § 404.984(d).

---

[1] The alleged onset date was amended from October 16, 2009, to November 13, 2013. (R. 16, 194, 211.)

# DISCUSSION

## I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant:

3

(1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2014. (R. 544.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since November 13, 2013, the alleged onset date.

4

(*Id.*) Next, the ALJ determined Plaintiff had the following severe impairments: "remote right upper extremity crush injury with residuals/neuropathy; adhesive capsulitis of the right upper extremity; degenerative disc disease; mood disorder/depression." (*Id.*) The ALJ found Plaintiff's "left hand injury/carpal tunnel syndrome (CTS), gout and headaches" not to be severe impairments. (R. 545.)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 545.) The ALJ expressly considered Listings 1.02, 1.04, 1.07, 11.14, 12.04, 12.06, and 12.07. (R. 546–48.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with the following provisos: use of the dominant right upper extremity for overhead reaching is limited to no more than occasional use; use of the right upper extremity for reaching in all directions, pushing, pulling, operating hand controls, fingering, feeling, and handling is frequent; occasional climbing ramps and stairs; no climbing ladders, ropes or scaffolds; occasional balancing and crawling; frequent kneeling, stooping and crouching; avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. He can understand and perform simple, routine, repetitive tasks, and is able to maintain concentration, persistence and pace to stay on task for 2-hour periods over the course of a typical 8-hour workday in order to perform such tasks.

(R. 548 (footnote omitted).) In making this assessment, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not persuasive of disability based upon the medical and other evidence in

5

the record." (R. 549.) At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. 557.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, namely: small parts assembler, cashier, and inspector hand packager. (R. 558.) The ALJ concluded that Plaintiff has not been disabled under the Act since November 13, 2013, Plaintiff's alleged onset date, through the date last insured. (*Id.*)

## IV. Plaintiff's Arguments

Plaintiff contends (A) the ALJ's RFC finding that Plaintiff can *frequently* use his right upper extremity for reaching, pushing, pulling, operating hand controls, fingering, feeling, and handling is not supported by substantial evidence and violates *Albright v. Comm'r Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999) (clarifying *Lively v. Sec'y HHS*, 820 F.2d 1391 (4th Cir. 1987), and explaining how findings from a previously adjudicated disability claim should be evaluated in a subsequent claim); and (B) the ALJ's analysis of Listing 1.04 is insufficient and violates *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013). (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #21] at 12–18.) Plaintiff argues remand would serve little purpose regarding argument (A) and, therefore, requests the matter be remanded with an award of benefits. (*Id.* at 18.) The Commissioner contends the RFC finding at issue is supported by substantial evidence and complies with *Albright*, and the ALJ's listing analysis is sufficient. For the reasons explained below, the court agrees with Plaintiff that the ALJ's RFC finding regarding frequent right upper extremity use is not supported by substantial

6

evidence but disagrees that a remand with an award of benefits is appropriate. The court therefore orders the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

### A. Right Upper Extremity RFC and *Albright*

Plaintiff filed an earlier claim for DIB, which was denied via a September 28, 2012, ALJ decision. (R. 76–86 (2012 ALJ opinion), 550–51 (discussing prior ALJ opinion).) In 2012, the ALJ found Plaintiff had the RFC to occasionally use his right upper extremity for pushing and pulling, handling, fingering, and feeling. (R. 80.) This prior finding matters here because an RFC with this limitation would result in a determination of disability. (*See* R. 587 (Vocational Expert testifying that no jobs would be available if right upper extremity use was limited to occasional).)

ALJ Willis acknowledged this 2012 RFC finding and Acquiescence Ruling 00-1(4), 2000 WL 43774 (Jan. 12, 2000), which addressed the Fourth Circuit's decision in *Albright*. (R. 550–51.) ALJ Willis assigned "little weight" to the prior RFC finding regarding right upper extremity use because "the expanded hearing record . . . does not support finding [Plaintiff] as limited during the period at issue." (R. 550–51.) ALJ Willis gave these reasons for this choice: (i) examining specialists in 2011 (Dr. John Erickson) and 2013 (Dr. Jacob Bosley) "observed self-limiting behavior by [Plaintiff] with respect to his right upper extremity"; (ii) physical exams in 2013 and 2014 showed normal tone and bulk with no atrophy, including a note from consultative examiner Dr. Maqsood Ahmed who had observed some atrophy in 2011; (iii) Plaintiff was observed in March 2013 to be able to reach overhead and perform dexterous

7

movements; and (iv) evidence from 2013 showed Plaintiff playing computer games, driving, making sandwiches, mowing the lawn, and engaging in personal care. (R. 551.)

Relatedly, ALJ Willis assigned little weight to the April 2013 opinion of state agency consultant Dr. Frank Virgili that Plaintiff would be limited to occasional use of his right upper extremity. (R. 555–56 (discussing R. 98–99).) ALJ Willis discounted this aspect of Dr. Virgili's opinion because it predated the period at issue and was inconsistent with the "expanded hearing record," which included observations of self-limiting behavior by Plaintiff and "opinions of no permanent nerve damage." (R. 556.) ALJ Willis appears to have credited all aspects of Dr. Virgili's opinion about Plaintiff's RFC except for the opinion that Plaintiff was limited to occasional use of his right upper extremity for handling, fingering, and feeling. (*See id.*)[2]

Plaintiff contends ALJ Willis cherry-picked facts and ignored important medical treatment notes in the record. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 14.) More specifically, Plaintiff asserts (i) ALJ Willis' opinion recounts medical evidence dating back to 2008 but fails to discuss and assign weight to the June 2010 opinion of Dr. Edwin Cooper that Plaintiff's right hand crush injury caused neurologic damage which reached maximum medical improvement by the date of the opinion (*id.* at 14–

---

[2] The failure of the previous ALJ, Gary Brockington, to explain adequately the weight assigned to the opinions of state agency consultants Dr. Virgili and Dr. Melvin Clayton was the basis for the remand in Plaintiff's earlier action in this court. *See Howard v. Berryhill*, No. 4:16-CV-228-D, 2017 WL 400216, at *5–6 (E.D.N.C. Aug. 25, 2017), *mem. & recommendation adopted by* 2017 WL 3995812 (E.D.N.C. Sept. 11, 2017).

8

15); (ii) Dr. Erickson's June 2011 examination, upon which the ALJ relied, cannot function as evidence of medical improvement because it occurred before the 2012 ALJ opinion (*id.*); (iii) Dr. Erickson's June 2011 examination still resulted in the doctor finding that Plaintiff's injury resulted in "residual paresthesias in the right hand and weakness" (*id.* at 16 (citing R. 371)); (iv) Plaintiff's hand issues "have repeatedly been described as neurological in nature . . . [and] have not been attributed to unhealed fractures or degeneration of the bones," and the ALJ's reliance on medical notes related to fractures or bone degeneration is therefore inappropriate (*id.*); (v) the ALJ's reliance on Plaintiff's activities of daily living (for example, driving his son to school events, mowing his lawn, and making sandwiches) is misplaced because there is no difference in these activities before and after September 2012 and these activities are too vague for the ALJ to formulate an opinion about how frequently Plaintiff can engage in manipulation with his right hand (*id.*); (vi) Dr. Ahmed's March 2013 examination notes indicating normal motor strength are too vague (*id.* at 16–17); and (vii) ALJ Willis improperly discounted 2015 primary care records showing limited strength and range of motion in Plaintiff's right hand because they occurred "after the period at issue" and were inconsistent with pre-2014 treatment notes from Dr. Donald Price and primary care providers (*id.* at 17–18).

In contrast, the Commissioner contends (i) Plaintiff's "almost exclusive reliance on [records from 2008 through 2010] shows why *Albright* does not apply in this case" (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #25] at 5); (ii) the record contained a significant amount of evidence that was not available to the ALJ in September 2012

9

(*id.*); (iii) substantial evidence supports ALJ Willis' findings (*id.* at 7–9); and (iv) ALJ Willis provided good reasons for discounting the 2015 treatment records (*id.* at 9).

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1545(a)(1). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p, 1996 WL 374184, at *1. In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(4). It is based upon all relevant evidence, which may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3). If necessary, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7.

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[ ] . . . which evidence the ALJ found credible and why." *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to his

10

conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion . . . . [M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). Simply put, this means an ALJ must "[s]how [his] work." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017) (applying same principle to an ALJ's listing analysis). Such analysis—"[h]armonizing conflicting evidence and bolstering inconclusive findings," *Patterson*, 846 F.3d at 662—is a "necessary predicate" to determining whether substantial evidence supports the Commissioner's findings, *Monroe*, 826 F.3d at 189 (quoting *Radford*, 734 F.3d at 295).

Acquiescence Ruling 00-1(4) interpreted *Albright* as follows:

> [W]here a final decision of [the Commissioner] after a hearing on a prior disability claim contains a finding at a step in the sequential evaluation process for determining disability, [the Commissioner] must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

Acquiescence Ruling 00-1(4), 2000 WL 43774, at *4. When applying this acquiescence ruling, the Commissioner "must consider all relevant facts and circumstances on a case-by-case basis." *Id.* Neither *Albright* nor the related acquiescence ruling abrogates the general requirements (discussed above) that apply to an ALJ's findings about a claimant's functional abilities. Rather, *Albright* concerned "a practical illustration of the substantial evidence rule." *Albright*, 174 F.3d at 477. The core

11

issue here is whether substantial evidence supports ALJ Willis' finding that Plaintiff can frequently, as opposed to occasionally,[3] use his right hand for manipulation and other dexterous actions. The ALJ was still required to reconcile any material inconsistencies in the record and to harmonize conflicting evidence pertaining to this issue.

There are several problems with the Commissioner's arguments. First, the criticism of Plaintiff's reliance on evidence predating the alleged onset date ignores ALJ Willis' summary of medical history dating back to 2008 and his reliance on evidence from 2011 to discount the September 2012 RFC finding. The ALJ cannot credit evidence from a certain time period and then ignore or discount other evidence from that same time period merely because of its age. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (holding that an ALJ cannot cherry-pick facts that support a finding of non-disability while ignoring facts that support a finding of disability); *Mallett v. Berryhill*, No. 5:18-CV-241-D, 2019 WL 2932776, at *4 (E.D.N.C. June 17, 2019) (citing *Hester v. Colvin*, No. 7:14-CV-163-BO, 2015 WL 3409177, at *2 (E.D.N.C. May 27, 2015), for the proposition that "[a]n ALJ's opinion that is internally inconsistent frustrates meaningful review and requires remand"), *mem. & recommendation adopted by Mallett v. Saul*, 2019 WL 2980032 (E.D.N.C. July 8, 2019); *Harrison v. Berryhill*, No. 4:16-CV-227-FL, 2017 WL 3669630, at *4 (E.D.N.C.

---

[3] "Frequently" means from one-third to two-thirds of an eight-hour workday and "occasionally" means very little up to one-third of an eight-hour workday. *See* SSR 83–10, 1983 WL 31251, at *6 (Jan. 1, 1983).

12

Aug. 7, 2017) (error for an ALJ to discount or ignore older evidence because it may be relevant to more recent evidence), *mem. & recommendation adopted by* 2017 WL 3669515 (E.D.N.C. Aug. 24, 2017); SSR 96–8p, 1996 WL 374184, at *2, 5 (RFC finding "based on all of the relevant evidence in the case record").

Second, reliance on the "expanded record" does not mean ALJ Willis was not required to resolve material inconsistences and harmonize conflicting evidence within the *entire* record. ALJ Willis said nothing about the report from Dr. Edwin Cooper (R. 303–12), who opined Plaintiff's right hand had reached maximum medical improvement as of June 2010 and had suffered neurological damage.[4] Dr. Cooper's opinion not only contradicts the ALJ's finding, but it tends to support the opinion of Dr. Virgili and appears consistent with the 2015 primary care treatment notes, both of which were discounted by ALJ Willis. The failure to explain how these pieces of evidence were reconciled with the RFC requires remand. *See Ivey v. Barnhardt*, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (citing *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987), for the proposition that "remand is appropriate where an ALJ fails to discuss relevant evidence that weighs against his decision").

Third, the ALJ's reliance on the statements from Plaintiff's wife about Plaintiff's daily living activities to justify the RFC finding is problematic. (*See* R. 551

---

[4] ALJ Willis stated he was not "giv[ing] any evidentiary weight to the medical opinions regarding the ability to work . . . received between 2009 and 2011 because [these opinions] predate the amended onset date by several years and are not reliable indicators of his functional ability during the period at issue." (R. 554.) This suffers from two problems: (1) the ALJ used medical evidence from that time period to justify his RFC finding, and (2) it does not parse an opinion regarding a functional ability from an opinion regarding a clinical finding.

13

(citing R. 232–42 (third party function report)).) "An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [he] can perform them." *Woods*, 888 F.3d at 694 (citing *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 263 (4th Cir. 2017)). This distinction is especially important here because the outcome depends on whether Plaintiff can—at the maximum—use his right hand for one-third of an eight-hour workday (160 minutes, or two hours and forty minutes). It is unclear how the daily activities referenced by the ALJ support the RFC finding because there is no discussion of the extent to which Plaintiff engages in the activities. Furthermore, the ALJ's overall treatment of the evidence from Plaintiff's wife is puzzling: the ALJ said he gave "partial weight" to the third-party report and explained that he found other evidence more probative. (R. 556.) But then the ALJ cited the third-party report as a reason for discounting other evidence. (R. 551.)

Fourth, the explanation of the weight assigned to state agency consultant Dr. Virgili, which was the basis for the earlier remand, remains unclear. The ALJ gives the same reasons for discounting Dr. Virgili's opinion that Plaintiff is limited to occasional use of his right-hand as he does for discounting the September 2012 ALJ opinion. (R. 555–56 (discounting Dr. Virgili's opinion that Plaintiff is limited to occasional "right upper extremity use restrictions other than occasional overhead reaching" because Dr. Virgili's opinion predates the period at issue and is inconsistent with the expanded hearing record).) As explained above, those reasons are insufficient. Moreover, ALJ Willis appears (i) to credit all of Dr. Virgili's opinions

14

about functional limitations except that regarding right hand manipulation, and (ii) to use Dr. Virgili's opinions as a basis for discrediting the other state agency consultant's opinion. (*See id.*) That looks like the type of cherry-picking the Fourth Circuit warned of in *Lewis*, 858 F.3d at 869.

Based on the foregoing reasons, the court cannot meaningfully review whether substantial evidence supports the ALJ's RFC finding that Plaintiff can frequently use his right upper extremity for "reaching in all directions, pushing, pulling, operating hand controls, fingering, feeling, and handling." However, there is conflicting evidence in the record that must be harmonized and thus remand would not be futile. *See Radford*, 734 F.3d at 296. Therefore, the court orders the case be remanded to the Commissioner.

### B. Listing 1.04

Plaintiff also argues the ALJ should have conducted a more thorough step-three analysis to determine if Plaintiff met Listing 1.04. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 18–20.) Plaintiff does not appear to argue that he actually met this listing, only that the ALJ's analysis was insufficient. (*Id.* at 20.) In light of the other issues requiring remand, the court need not determine whether the listing analysis was sufficient. This matter can be addressed on remand.

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings [DE #20] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #24]

15

is DENIED, and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

This 7th day of September 2020.

_____
KIMBERLY A. SWANK
United States Magistrate Judge